UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KURT ALLEN ORLOWSKI,

       Plaintiff,

  v.

                                      Case No. 11-15676

MICHAEL J. ASTRUE, COMMISSIONER OF      Honorable Julian Abele Cook, Jr.
SOCIAL SECURITY,

              Defendant.

ORDER

The Plaintiff, Kurt Allen Orlowski, has petitioned this Court to overturn a final decision by the Defendant, Michael J. Astrue, acting in his capacity as the Commissioner of the Social Security Administration ("Commissioner").

These two parties have now filed motions for summary judgment, both of which contend that there are no genuine issues of a material fact to be resolved in this action, with each side citing to Federal Rule of Civil Procedure 56 in support of their respective positions.

Magistrate Judge David Grand, to whom the motions for summary judgment were referred for an evaluation, filed a report on November 7, 2012 in which he recommended that the Court (1) grant the Commissioner's motion for summary judgment, and (2) deny Orlowski's request for the entry of a summary judgment in his favor. Orlowski has registered his objections to this report.

I.

The magistrate judge included a detailed and thorough account of the factual history of this case in his report. Inasmuch as neither party has expressed an objection to the facts included therein,

this Court will adopt them as described by the magistrate judge. Nevertheless, a summary of the relevant facts will be supplied below.

Orlowski filed an application for disability benefits and supplemental security income benefits with the Social Security Administration in August 2007, claiming to have sustained a recognizable disability on April 22, 2006. However, his petition for relief was rejected on January 7, 2008. An administrative hearing on January 26, 2010 followed.

Orlowski, who contends that his disablement was caused by depression and anxiety, had worked as a pizza cook for 33 years before experiencing a series of panic attacks, which allegedly caused him to quit his job. Although he has since participated in a plumbing training program and worked for a company that constructs bathrooms, neither endeavor resulted in steady employment. Despite being unemployed, Orlowski is able to handle some personal matters without the aid of other persons (i.e., handling minor errands and managing his finances) with the exception of his brother, Christopher.

Dr. James Walker, who treated Orlowski from 2006 to 2007, diagnosed him as suffering from anxiety, depression, and heart palpitations. In January 2007, Dr. Dennis Beshara, who concluded that Orlowski suffered from (1) mild limitations in the normal activities of daily living and social functioning, and (2) handling moderate difficulties in maintaining concentration and persistence. Although it was Dr. Beshara's belief that his patient was moderately limited in some of his mental functions, he opined that Orlowski's medical history should not preclude him from any future occupational activity as an unskilled worker.

During the latter part of 2007, Orlowski underwent a consultative examinations by a medical doctor, Dr. Matthew Dickson, and a psychologist, Carrie Neubecker, both of whom diagnosed him

2

as having a "major depressive disorder, mild" and "an anxiety disorder." They opined that his condition "would moderately impair his ability to perform work related activities."

During the administrative hearing on January 26, 2008, an independent medical examiner, Dr. Larry Kravitz, opined that Orlowski had mild restrictions in activities of daily living and social functioning and moderate limitations in concentration, persistence, and pace. He recommended that Orlowski's future employment should be limited to brief and superficial workplace contacts and ordinary levels of work stress. Although Dr. Kravitz expressed a belief that Orlowski could understand and follow simple and detailed instructions, he opined that the act of carrying out detailed instructions could create difficulty for him.

At this administrative hearing, a vocational expert, Stephanee Leach, when queried about the employment prospects for a hypothetical person with Orlowski's work skills and history, and assuming that his work assignments were "limited to [1] unskilled, simple, routine, repetitive work with brief and superficial interaction with supervisors, coworkers and the public and . . . [2] ordinary levels of work stress," testified that such a person would be unable to perform his prior work but would be able to perform the jobs of assembler, material handler, or packer.

Thereafter, the administrative law judge issued an opinion in which she determined that Orlowski was not disabled within the meaning of the Social Security Act, and after concluding that, despite having suffered from "depression, anxiety disorder, . . . schizophrenia, [and a] remote history of substance abuse," none of these impairments equaled a listed impairment. Moreover, she was of the belief that Orlowski possessed the mental residual functional capacity to "understand, remember and carry out unskilled, simple, repetitive, routine tasks and to interact appropriately with the general public, supervisors, and coworkers on an intermittent, brief and superficial basis with

3

ordinary levels of stress."  Notwithstanding her opinion that Orlowski was unable to successfully return to his past work, she found that there were a significant number of jobs within the national economy that could be performed by him - a condition which precluded him from being classified as a "disabled" person.

This decision became the final decision of the Commissioner on October 28, 2011, when the Appeals Council denied Orlowski's request for review. This lawsuit followed.

II.

The Court has the authority to review the Commissioner's final decisions to determine if (1) the findings are supported by substantial evidence, and (2) the correct legal standards were applied. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted), and is "more than a scintilla of evidence but less than a preponderance," *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence, even if such evidence could also support a different conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). This review is limited in scope to an examination of the record only. It is important to note that the reviewing court must not "review the evidence *de novo*, make credibility determinations [or] weigh the evidence." *Brainard*, 889 F.2d at 681.

III.

In his appeal to this Court, Orlowski has identified the following objections to the magistrate judge's report and recommendation; namely,  (1) the administrative law judge's failure to mention

4

the weight given to the diagnosis of his primary care physician is not harmless error; (2) the magistrate judge erred by considering the fact that Orlowski performs simple tasks around the house as medical evidence that he has the ability to work; (3) the administrative law judge failed to expressly impose concentration and anxiety limitations when she determined the residual functional capacity and explained the hypothetical to the vocational expert; and (4) the vocational expert's testimony was not sufficient to support a finding that a significant number of jobs exist in the national economy which Orlowski is able to perform. These objections will be addressed seriatim.

A.     Orlowski first contends that the administrative law judge erred by failing to mention the weight that she ascribed to the diagnosis of his primary care physician. The magistrate judge determined that this omission constituted harmless error, and Orlowski objects to this conclusion.

"The [administrative law judge] 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). "[T]he regulations require the [administrative law judge] to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)). On the other hand, "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the [administrative law judge] did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Wilson*, 378 F.3d at 547.

In this case, the administrative law judge noted that Dr. Walker described Orlowski as a

patient who continued to (1) suffer from depression and anxiety, and (2) complain about heart palpitations without any anginal pain.

The administrative law judge's determination that Orlowski suffered from depression and anxiety disorder is consistent with Dr. Walker's diagnosis. Furthermore, Dr. Walker offered no opinion as to the limitations that these disorders would impose on Orlowski's ability to find and perform work. Therefore, the administrative law judge's determination that Orlowski could perform unskilled work despite these limitations is consistent with Dr. Walker's diagnosis and the alleged failure to explain the weight given to the diagnosis is irrelevant or, at worst, harmless error. *See McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 215 F.3d 1327, at *5 (6th Cir. 2000) (unpublished) ("[T]he mere diagnosis of an impairment does not . . . reveal anything about the limitations, if any, it imposes upon an individual.").

B.    Orlowski next complains that the magistrate judge erred by concluding that the record contains sufficient medical evidence to support the administrative law judge's determination that Orlowski has the ability to work. In Orlowski's opinion, the magistrate judge inappropriately relied upon testimony which indicated that he is able to do simple tasks around that house because - according to Orlowski - the ability to perform intermittent tasks is not evidence that he is able to work.

The Court disagrees with Orlowski's characterization of the magistrate judge's reasoning. The magistrate judge noted that the administrative law judge "referenced not only Orlowski's primary care physician's notes, but the treatment notes from New Passages, from Ms. Clinkston, and from the consulting examiner." The additional statement that Orlowski is capable of running errands and doing light work around the house was not the only - or even the primary - evidence relied upon

by the magistrate judge. The fact that Orlowski engaged in some daily activities, while not dispositive of his ability to work, may be considered along with other medical evidence, as part of an administrative law judge's credibility determination. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("An [administrative law judge] may . . . consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.").

C.      Orlowski objects to the magistrate judge's conclusion that the testimony of the vocational expert constitutes substantial evidence that sufficient jobs exist in the national economy which he can perform. Specifically, Orlowski asserts that the administrative law judge failed to include any anxiety limitations or concentration limitations in the hypothetical profile, arguing that the now-challenged hypothetical question to the vocational expert witness did not accurately reflect his actual limitations.

        "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). In this case, the administrative law judge posed the following hypothetical: "[A]ssume an individual the claimant's age, education and work experience who has no exertional limitations but would be limited to unskilled, simple, routine, repetitive work with brief and superficial interaction with supervisors, coworkers and the public and would be limited to ordinary levels of work stress." (Tr. 56).

7

Orlowski submits that the limitation of "brief and superficial interactions with supervisors, coworkers and the public and would be limited to ordinary levels of work stress" does not take into account the moderate impairment of concentration found by the administrative law judge. The Court agrees that this excerpted phrase does not adequately indicate the proper impairment of concentration.  However, it appears that Orlowski has overlooked the balance of the hypothetical question. The relevant language is the characterization of the work as "unskilled, simple, routine, [and] repetitive." The magistrate judge correctly determined that this description adequately incorporates the collective determination of Drs. Kravitz and Beshara that, despite a moderate restriction in his concentration and ability to maintain attention, Orlowski was capable of performing unskilled work and following short, simple instructions. *See* Rep. & Rec. 22 (ECF No. 14); *Infantando v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (unpublished).

D.     Finally, Orlowski contends that the vocational expert only testified to a reduced range of jobs, which is insufficient to indicate that a sufficient number of jobs exist in the national economy.  The total number of jobs available in the state, in the medium classification, for packers, sorters, or assembly totaled 44,000 jobs. In the light classification the number of jobs totaled 14,500. Orlowski has not offered any legal authority to support his contention that this number is insufficient.

E.     Orlowski also submits that after the administrative law judge inquired of the vocational expert as to whether her testimony was consistent with the Dictionary of Occupational Titles, she should have investigated further to ensure that it was indeed consistent. This argument is without merit. SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000) only requires an administrative law

8

judge to inquire whether the vocational expert's testimony is consistent with the occupational

information supplied in the Dictionary of Occupational Titles. Having so inquired, the

administrative law judge is not obligated to investigate further. *Beinlich v. Comm'r of Soc. Sec.*,

345 F. App'x 163, 168 (6th Cir. 2009) (unpublished). The obligation for further inquiry falls to

the claimant's attorney, who in this case declined to cross-examine the vocational expert. *See id.*

at 168-69.

IV.

For the reasons that have been outlined above, the Court will adopt the report of the

magistrate judge in its entirety.  In so doing, the Court will (1) grant the Commissioner's motion for

summary judgment, (2) deny Orlowski's motion for summary judgment and (2) affirm the decision

of the Commissioner.


IT IS SO ORDERED.


Date: March 28, 2013                                          s/Julian Abele Cook, Jr.
                                                             JULIAN ABELE COOK, JR.
                                                             United States District Judge


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their
respective email addresses or First Class U.S. mail to the non-ECF participants on March 28, 2013.


                                                             s/ Kay Doaks
                                                             Case Manager


9

10